UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATRICE PIERRE OBO HER MINOR                          CIVIL ACTION
CHILDREN BRITNEY PIERRE, DARIELLE
PIERRE, DOMINIQUE PIERRE AND
DARRELL PIERRE, JR.

VERSUS                                                NO. 12-1891

LEE HARDY, THE JEFFERSON PARISH                       SECTION C(3)
SHERIFF'S OFFICE AND SHERIFF
NEWELL NORMAND

ORDER AND REASONS

Before this Court is the defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(c) or, alternatively for Summary Judgment Pursuant to F.R.C.P. 56. Rec. Doc. 34.n Plaintiff's oppose. Rec. Doc. 37. Having considered the record, the law, and the memoranda of counsel, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion, as explained below.

I. Factual Background and Procedural History

This case concerns the fatal shooting of the decedent, Darrell Carter, at the hands of Lee Hardy, a Jefferson Parish Sheriff's Deputy on September 7, 2011. At his deposition in this matter, Deputy Hardy gave the following account of the incident:

On the date in question, at approximately 3:00 AM, he came upon the decedent, a female, and another male standing next to a black Dodge Charger at the corner of Newton and Upland Streets. Hardy Dep. 46-47, Nov. 6, 2013. The deputy saw money and/or items changes hands. *Id.* at 47. He got out of his car and asked the group to come over and talk to him. *Id.* One man put his hand on the trunk of the Charger immediately. *Id.* at 48-49. The decedent had his hands in his pockets. *Id.* at 48. Deputy Hardy asked him to come closer to the Charger and take his hands out

of his pockets. *Id.* at 48-49. The decedent came closer but only took his hands out of his pockets momentarily before putting them back in. *Id.* at 49-50. When the decedent was close enough, Deputy Hardy took him by the left shoulder, grabbed his right hand, pulled it out of his pocket, and pushed him toward the Charger. *Id.* The decedent then pushed off of the car and fled, striking the Deputy Hardy in the process. *Id.* Deputy Hardy chased after him, Taser drawn. *Id.* at 54-55. When the decedent came to a fence on the east side of a nearby apartment complex, he fired two shots at Deputy Hardy while facing away from him. *Id.* at 57-60, 72. Deputy Hardy accidentally discharged his Taser, stumbled, fell, and fired two shots at the decedent. *Id.* at 60-62. Once the decedent had climbed over the fence and landed on the other side, he fired two or three more shots, this time while the two men were facing each other. *Id.* at 61-62. Deputy Hardy fired two more shots at the decedent. *Id.* at 62. The decedent then fled. *Id.*

Deputies discovered the decedent collapsed in a nearby field suffering from multiple gunshot wounds. Rec. Doc. 34-5 at 4. On the side of the fence where Deputy Hardy had been during the shootout, deputies recovered two spent 9 mm shell casings and a spent Taser cartridge. *Id.* at 6. On the other side, they recovered a Hi-Point model C9, 9 mm semiautomatic pistol in a puddle of standing water. *Id.* at 5. They also documented blood on a different fence separating the yard where the pistol was found and the decedent's body was found. *Id.* The decedent's hands tested negative for gunshot residue. *Id.* Ballistic testing revealed that one of the shell casings recovered on the scene matched Deputy Hardy's service weapon and the other matched the Hi-Point C9. Rec. Doc. 34-6. Authorities recovered audio and video from the Deputy Hardy's Taser. *See* Hardy Dep. 79. They also confirmed that he had fired four rounds since going on duty that night. Rec. Doc. 34-5 at 14.

2

Plaintiffs filed this lawsuit on July 19, 2012, claiming wrongful death and survivor's benefits for violations of the decedent's First, Fourth, Fifth, Fourteenth Amendment rights, all pursuant to 42 U.S.C. §1983. Rec. Doc. 1. Counsel of record at the beginning of the case had diligently pursued this matter, seeking to enhance the Taser audio in the hopes of developing evidence to support the fact that Deputy Hardy was not justified in using lethal force. However, in June and July of 2014, counsel moved to withdraw from the case, stating that the attorney-client relationship had ended. Rec. Docs. 27 & 30. The Court eventually granted leave to substitute and continued the trial date on August 28, 2014. Rec. Doc. 48. In the midst of all of this, defendants filed the instant motion to dismiss, or alternatively for summary judgment, arguing that plaintiffs have not properly pleaded or shown filiation to the decedent or that excessive force was used against him. Rec. Doc. 34.

II. Standard of Review

*A. Rule 12(c): Judgment on the Pleadings*

"A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). Any party may move for judgment on the pleadings, "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.

2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004)). Judgment on the pleadings should be granted when the complaint fails to state a valid claim for relief when viewed in the light most favorable to the plaintiff. *Great Plains Trust Co.*, 313 F.3d at 312 (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir.2001)). Pleadings should be construed liberally and the court must accept all well pleaded allegations of fact as true. *Id.* at 312-13 (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (per curiam)). However, the Court will not accept as true conclusory allegations or unwarranted deductions of fact. *Id.* at 313 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2002)). Likewise, judgment on the pleadings will be appropriate where the plaintiff fails to allege sufficient facts to state a claim for relief that is plausible on its face. *Doe*, 528 F.3d at 418 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*B. Rule 56: Summary Judgment*

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324, 106 S. Ct. at 2253.

A genuine issue of fact exists if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1996). "[U]nsubstantiated assertions" and "conclusory allegations" will not defeat a properly supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S. Ct. at 2510.

When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

III. Analysis

*A. Filiation*

Defendants first argue that plaintiffs "have failed allege or show that they have the capacity to bring the present action insofar as Catrice Pierre is not the spouse of the decedent and has failed to allege or show that the named minor children are the 'children' of the decedent." Rec. Doc. 34-1 at 1.

Pursuant to 42 U.S.C. §1988, the state wrongful death statute determines who has capacity to bring a wrongful death claim under §1983. *Aguillard v. McGowen*, 207 F.3d 226, 231

5

(5th Cir. 2000). Louisiana Civil Code articles 2315.1 and 2315.2 control capacity to sue in survival actions and wrongful death actions, respectively. Both statutes allow "the surviving spouse and child or children of the deceased or either the spouse or the child or children." La. Civ. Code arts. 2315.1, 2315.2

Louisiana law defines "children" as "those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law . . . ." La. Civ. Code art. 3506(8). A man is presumed to be a child's father when the child is born during his marriage to the mother or "within three hundred days from the date of termination of the marriage." La. Civ. Code art. 185. If the child's filiation is not presumed, the child can initiate an action to establish paternity. La. Civ. Code art. 197. If the action is instituted after the alleged father's death, the child must prove paternity by clear and convincing evidence. *Id.*; *see also* La. Civ. Code art. 197, cmt. (d). "A filiation action inherently accompanies an illegitimate child's wrongful death and survival action." *Henderson v. Turner*, No. 11-39, 2012 WL 3109482, at *4 (M.D. La. July 31, 2012); *see also Reese v. State Dept. of Public Safety and Corrections*, 2003-1615 (La. 2/20/04), 866 So.2d 244, 250.

In this case, the plaintiffs have pleaded that they were informally acknowledged by the decedent. Rec. Doc. 1, ¶¶ 4-6. If an illegitimate child was not formally acknowledged, for instance, by being named in the birth certificate or by executing a notarial act acknowledging paternity, the child may prove paternity by informal acknowledgment. *Jordan v. Taylor*, 568 So.2d 1097, 1098 (La. App. 4 Cir. 1990); *accord* La. Civ. Code art. 197 cmt. (c). The child must prove by clear and convincing evidence that the deceased alleged parent acknowledged the child when the parent was alive. *Jenkins v. Mangano Corp.*, 00-0790 (La. 11/28/00), 774 So. 2d 101,

6

103. Evidence of filiation through informal acknowledgment "must be continuous, habitual, unequivocal, and leave little doubt that the alleged father considered himself to be the father of the child." *Jordan*, 568 So.2d at 1098.

In this case, plaintiffs have pleaded that the decedent "had at least informally acknowledged these children as his, having held himself out as their father." Rec. Doc. 1, ¶ 2. Catrice Pierre has further sworn that the decedent "continuously represented to others that these children were his, treated the children as his, and provided them with support, care and nurturing as his children." Rec. Doc. 37-2, ¶ 3.

Ms. Pierre's allegation is specific enough in nature to state a claim of paternity that is "plausible on its face." *Cf. Twombly*, 550 U.S. at 570; *Doe*, 528 F.3d at 418. In particular, it provides defendants enough detail to allow them to conduct discovery on this claim. They can propound discovery requests seeking the identification of individuals to whom the decedent represented his paternity and specific occasions when he provided support, cared for, or nurtured the plaintiffs. Judgment on the pleadings is unwarranted, provided that plaintiffs amend their complaint to reflect these additional allegations. The Court will grant plaintiffs 14 days leave to accomplish this amendment.

Because the affidavit fails to cite specific, provable examples of the decedent's continuous and unequivocal acknowledgment of the plaintiffs, the Court would find that it is insufficient to create a genuine issue of material fact needed to withstand summary judgment on paternity. However, this affidavit was procured by former counsel of record at a time when the attorney-client relationship between counsel and the plaintiffs had technically ended. Plaintiffs should be allowed the opportunity to respond to this motion with meaningful representation.

Therefore, the Court will deny summary judgment on this ground without prejudice to reurging.

*B. Excessive Force*

Defendants next argue that plaintiffs' excessive force claim should be dismissed because there is no dispute that Deputy Hardy was firing upon the deputy with a 9mm handgun. Rec. Doc. 34-1 at 13. Excessive force claims implicate the right to be free from unreasonable seizure under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 393-95, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989). To prove a violation of the Fourth Amendment right to be free from the use of excessive force, a plaintiff must show: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 233 (5th Cir. 2009)). The reasonableness of particular force is a fact sensitive question and must be judged from the perspective of a reasonable officer under the circumstances, rather than with 20/20 hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871. "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Rockwell*, 664 F.3d at 991 (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). Conversely, "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701, 85 L. Ed. 2d 1 (1985).

Here, it is undisputed that decedent died as a result of being shot by Deputy Hardy.

Hardy Dep. at 87-88; *see also, generally* Rec. Doc. 34-5. Defendants argue that plaintiffs cannot establish a genuine issue of material fact regarding whether the decedent fired four shots at Deputy Hardy from a Hi-Point C9 9mm handgun, posing a serious threat to Deputy Hardy and justifying his decision to return fire. Rec. Doc. 34-1 at 13. Although there is no witness statement to contradict Deputy Hardy directly, some of the circumstantial evidence would allow a rational finder of fact to conclude that he used excessive force. *Cf. Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1332 (5th Cir. 1988).

First, at his deposition, Deputy Hardy could only count four distinct gunshots on the Taser audio and video. Hardy Dep. 83-84. Deputy Hardy's gun was fired four times during the incident. Rec. Doc. 34-5 at 14. The decedent's hands tested negative for gunshot residue. *Id.* at 5. This is sufficient to create a triable issue of fact as to whether decedent possessed or fired the Hi-Point C9 9mm handgun that was recovered on the scene.

Further, assuming that the Taser audio and video depict additional shots being fired, thereby corroborating Deputy Hardy, there is a genuine issue of material fact as to whether Deputy Hardy shot first and further whether the decedent had surrendered before the deputy fired the final shot. At the beginning of his deposition, Deputy Hardy had a vivid recollection of seeing a muzzle flash near the decedent's waistline after he ran into, and bounced off of, the fence behind the apartment building. Hardy Dep. 59-60, 72. He testified that this was the first shot that anybody fired. *Id.* However, the Taser video and audio depict the first shot happening before this point, while Deputy Hardy is still chasing the decedent through the yard leading up to the fence. *Id.* at 81-82. It is possible that Deputy Hardy was mistaken about when and how the decedent first shot at him. It is also possible that the deputy fired first. The latter inference is

9

reasonable in light of the fact that the decedent was shot twice in the back and would have had difficulty firing with his back turned while successfully outrunning the deputy. *Id.* at 67, 87.

Finally, in light of the Taser audio, Deputy Hardy admitted that there was a pause between the final shot, which he admits to firing, and the previous shots, which he could neither remember nor determine who fired. Hardy Dep. 84-86. The decedent would have been on the opposite side of the fence facing the deputy when this last shot was fired. *Id.* at 92. No shell casing matching the firearm purportedly used by the decedent was recovered on that side of the fence. By contrast, the gun itself was recovered on that side, far away from where the decedent ultimately collapsed. Rec. Doc. 34-5 at 5. A trier of fact could infer that the decedent had complied with the officer's instructions and surrendered his weapon in the pause between the gunshots.

Additional evidence may arise to foreclose any or all of these theories. However, for the time being, the case may move forward on these grounds.

*C. Municipal Liability Claims Under §1983 and State Law Claims*

Lastly defendants argue that plaintiffs' claims for municipal liability under 1983 and for violations of state law should be dismissed. Rec. Doc. 34-1 at 14-25. Municipal liability can only be imposed under 1983 where a policy maker has promulgated an official policy that is the moving force behind a violation of constitutional rights. *See, e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013). Defendants argue that plaintiffs cannot prove that any policy of the Jefferson Parish Sheriff's Office was the "moving force" behind a violation of the decedent's constitutional rights because there was no underlying rights violation. Rec. Doc. 34-1 at 14. However, as stated above, there are genuine issues of material fact regarding whether the

decedent's rights were violated. Similarly, defendants attack on the plaintiffs' state law claims is premised on the idea that there is no dispute regarding whether the decedent fired upon Deputy Hardy first. *Id.* at 16-25. For the reasons already set forth above, the Court denies this motion. *See Deville v. Marcantel*, 567 F.3d 156, 173 (5th Cir. 2009) (the considerations required to analyze excessive force claims under Louisiana law are "sufficiently similar to the *Graham* factors that our decision on [plaintiff's state] claims mirrors our decision on plaintiffs' §1983 excessive force claim").

Accordingly,

IT IS ORDERED that the defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(c) or, alternatively for Summary Judgment Pursuant to F.R.C.P. 56 is GRANTED IN PART and DENIED IN PART. Rec. Doc. 34. By September 26, 2014 at 4:30 P.M., plaintiffs shall amend their complaint to plead specific facts showing continuous, habitual, and unequivocal informal acknowledgment by the decedent during his lifetime as set forth in this Order and Reasons. Defendants' motion is DENIED in all other respects.

New Orleans, Louisiana, this 12th day of September, 2014

                                                HELEN G. BERRIGAN
                                                UNITED STATES DISTRICT JUDGE